# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **ANGEL ABDULSAMI ABDULLAH**,[1] | ) ) | |
| Plaintiff | ) ) | Civil Action No.: 7:15cv00021 |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| **J. F. WALRATH, et al.,** | ) | United States Magistrate Judge |
| Defendants | ) | |

The pro se plaintiff, Angel Abdulsami Abdullah, is a Virginia Department of Corrections, ("VDOC"), inmate formerly housed at Red Onion State Prison, ("Red Onion").[2] This case is before the court on the plaintiff's Motion For Emergency Preliminary Injunction, (Docket Item No. 18), ("Motion"). A hearing was held before the undersigned on the Motion on June 25, 2015. The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

Abdullah has pending in this court a 42 U.S.C.A. § 1983 action against defendants J.F. Walrath, former Assistant Warden of Red Onion; Randy Mathena, former Warden of Red Onion;[3] M. Younce, Unit Manager of Red Onion A

---

[1] The plaintiff notified the court, by letter received August 27, 2015, that he has changed his name from Lamont D. Minor to Angel Abdulsami Abdullah. (Docket Item No. 86.) Therefore, the plaintiff will hereinafter be referred to as "Abdullah."

[2] By the same letter, received August 27, 2015, the plaintiff also informed the court that he has been transferred from Red Onion to Wallens Ridge State Prison, ("Wallens Ridge"). (Docket Item No. 86.)

[3] Based on testimony provided at the hearing, Mathena now is working out of VDOC headquarters in Richmond, Virginia.

Building; Lt. J. McQueen, Red Onion Institutional Investigator; R. Murphy; Counselors B. Turnbill, P. Sykes and J. King; and Correctional Officers Lt. G. Adams, Sgt. D. Barton and R. Clevinger. Abdullah's claims against another defendant, B. Mullins, were dismissed previously. Abdullah's claims allege that the defendants failed to protect him from violence from another inmate. The Motion currently before the court seeks injunctive relief against the defendants.[4]

Abdullah claims that the defendants have retaliated against him for filing his currently pending 42 U.S.C.A. § 1983 lawsuit by making physical threats against him, threats to detain him in segregation, threats to write false charges against him, by denying him copies of legal documents and delaying the provision of monthly statements necessary to proceed in forma pauperis, by preventing him from participating in recreation, by instructing the nursing staff at Red Onion to withhold his prescribed HIV medication, by falsifying his medical records to reflect that he refused his prescribed HIV medication, by refusing to give him informal complaint forms to voice his complaints regarding these alleged retaliatory actions and by tampering with his mail. Abdullah seeks an order for injunctive relief to stop these alleged retaliatory activities and to be transferred from Red Onion to another VDOC facility.

"The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Furthermore, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances'

---

[4] The Motion previously was denied, insofar as it pertained to certain nonparties, by order entered June 17, 2015. (Docket Item No. 67.) A separately filed motion for a temporary restraining order was denied in its entirety for the same reasons. (Docket Item Nos. 28, 67.)

which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989)). The court must consider four factors in deciding whether to grant a preliminary injunction: (1) the likelihood of irreparable harm to the movant if preliminary injunctive relief is denied; (2) the likelihood of harm to the opposing party if the requested relief is granted; (3) the movant's likelihood of succeeding on the merits of the action; and (4) the public interest. *See Equity in Athletics, Inc. v. Dep't of Educ.,* 504 F. Supp. 2d 88, 99 (W.D.Va. 2007) (citing *Direx Israel, Ltd.*, 952 F.2d at 812). The party seeking preliminary injunctive relieve bears the burden of establishing that these factors support granting such relief. *See Equity in Athletics, Inc.*, 504 F. Supp. 2d at 99 (citing *Direx Israel, Ltd.*, 952 F.2d at 812).

Based on the evidence before the court, I find that Abdullah has failed to establish that the entry of a preliminary injunction is appropriate against any of the defendants. As an initial matter, the court notes that Abdullah's incarceration at Red Onion began on February 28, 2014. From December 5, 2014, through February 10, 2015, Abdullah was housed in the B Building at Red Onion. From February 10, 2015, through the time of the hearing, he was housed in the A Building, specifically the A3 pod, a long-term segregation unit. Abdullah has been diagnosed as HIV positive and has been prescribed medication to treat this condition.

As stated above, Abdullah alleges that the defendants took numerous actions in retaliation for his filing of this § 1983 lawsuit and this Motion. Specifically, Abdullah claims that defendant J. King, a long-term segregation counselor working

in both the A and B housing units, instructed Officer Newberry to physically assault him if he did not drop his lawsuit, instructed officers to "turn up the pressure" and issue bogus charges against him to justify keeping him in segregation and instructed the nursing staff to withhold his HIV medication from him and falsify his medical records to reflect that he refused the medication. Likewise, Abdullah alleges that defendant John Walrath, the former Assistant Warden at Red Onion, instructed the nursing staff to withhold this medication and to so falsify his medical records. Abdullah claims that Walrath threatened to withhold his HIV medication until he dropped his lawsuit. He further claims that Walrath publicized his HIV positive status to others at the prison by publicly stating "I hope you die, you AIDS-infested nigger." Next, Abdullah alleges that defendants Unit Manager Younce and Sgt. D. Barton refused to give him complaint forms on multiple occasions, prohibiting him from voicing his complaints regarding this alleged retaliatory behavior. Lastly, Abdullah claims that the defendants are tampering with his mail.

At the hearing on the Motion, Abdullah conceded that none of the named defendants handle inmate mail. Likewise, he conceded that none of the defendants have denied him recreation privileges, and none of the defendants have issued any bogus charges against him to keep him in segregation. Therefore, I find that the issuance of injunctive relief is not appropriate against any of the defendants on any of these claims, and I recommend that the court deny the Motion insofar as such relief is sought.

Next, I find that the issuance of injunctive relief against King also is not appropriate. Abdullah alleged that King instructed Officer Newberry to physically

assault him if he did not drop his lawsuit, instructed officers to "turn up the pressure" and issue bogus charges against him to keep him in segregation and instructed the nursing staff at Red Onion to withhold Abdullah's HIV medication and falsify his medical records to reflect a refusal of such medication. King testified that she had no knowledge of Abdullah's Motion or lawsuit until mid-March 2015. She further testified that she has had no contact or communication with Abdullah since the last week of February 2015. While King specifically denied all of the allegations that Abdullah leveled against her, she further testified that, as of March 1, 2015, she was transferred to the C Building at Red Onion and no longer had any contact with Abdullah, who, at the time of the hearing continued to reside in the A Building and has since been transferred to Wallens Ridge. That being the case, I find that Abdullah cannot show the necessary likelihood of irreparable harm to him if preliminary injunctive relief is denied, and I recommend that the court deny the Motion, insofar as it seeks injunctive relief against King.

Next, Abdullah alleges that John Walrath, former Assistant Warden at Red Onion,[5] threatened to withhold his prescribed HIV medication until he dropped his lawsuit. To this end, Abdullah claims that Walrath instructed two nurses, separately, to withhold his HIV medication on two separate occasions in January 2015. He further alleges that on one of those occasions, Nurse Mullins falsely wrote on his medical chart that he refused to take the medication. Abdullah admitted at the hearing that he currently is receiving the HIV medication as prescribed and, therefore, he further admitted that Walrath's threat to withhold his HIV medication until the lawsuit was dropped did not occur. Abdullah also claims

---

[5] Walrath served as the Assistant Warden at Red Onion from February 13, 2013, through March 24, 2015. Since March 24, 2015, he has been the Warden at Marion Correctional Treatment Center.

that Walrath publicized his HIV positive status at the prison by stating "I hope you die, you AIDS-infested nigger." At the hearing, Walrath denied all of Abdullah's allegations. He testified that he first became aware of Abdullah's Motion and lawsuit on approximately March 17, 2015. Additionally, testimony at the hearing included that Walrath no longer works at Red Onion, but has been the Warden of Marion Correctional Treatment Center since March 24, 2015, and Walrath testified that he has had no contact with Abdullah since moving facilities, nor does he have any need for any such contact. Even assuming, for the sake of argument, that Abdullah's allegations against Walrath are true, I recommend that his claim for injunctive relief against him be denied. As Walrath no longer works at Red Onion, but is located at another VDOC facility, and Abdullah has been transferred to Wallens Ridge, Abdullah simply cannot show a likelihood of irreparable harm to him if the preliminary injunctive relief is denied.

Lastly, Abdullah alleges that Unit Manager Michael Younce and Sgt. D. Barton have refused to give him informal complaint forms on multiple occasions in order to hinder him from voicing his complaints regarding the defendants' alleged retaliatory actions. Younce testified that he has served for two years as the Unit Manager of A Building at Red Onion, which includes the A3 segregation unit where Abdullah was housed during the relevant time. Abdullah claims that he asked Younce for a complaint form the day prior to the hearing to complain about the denial of recreation, but Younce refused, referencing something about "dropping paperwork." According to Abdullah, he asked Sgt. Barton a little more than a week prior to the hearing for a complaint form, but Barton stated "I thought you were dropping this lawsuit." Abdullah claims that Sgt. Barton refused to give him a complaint form. Abdullah further claims that every time Sgt. Barton's shift

comes on, he requests complaint forms, but is denied, stating that he is "tired of [Abdullah] writing stuff up." At the hearing, Younce denied these allegations, stating that he was unaware of Abdullah's Motion and lawsuit until some time in May 2015. Younce specifically denied that Abdullah ever asked either himself or Sgt. Barton for an informal complaint form or that either of them ever denied such request. While Abdullah testified that inmates could obtain informal complaint forms only from supervisors, such as Unit Manager Younce and Sgt. Barton, Younce testified that a change in policy had made it possible for inmates to obtain such forms from officers and counselors, as well. Although Younce was unsure of the effective date of this policy change, he testified it had been in effect for "a while." Younce testified that he had no knowledge of Abdullah being denied complaint forms when requested, and he was unaware of Abdullah being restricted to the number of grievances he could file. Younce testified that, at the time of the hearing, Abdullah remained housed in A3, and he continued to have some level of contact with him while making daily rounds. However, Younce denied making any threats of any kind to Abdullah and was unaware of anyone in Abdullah's housing unit making such threats. He testified that Abdullah had never informed him that King was threatening him or that Walrath was instructing the nursing staff to withhold his medication.

I find that granting injunctive relief against Unit Manager Younce and Sgt. Barton is inappropriate despite the evidence that, at the time of the hearing, Unit Manager Younce continued to have regular contact with Abdullah and that Sgt. Barton continued to work in the A Building. Even assuming that Younce and Barton refused to give Abdullah such informal complaint forms, there is evidence that he could have obtained them from any other officer or counselor. Therefore,

-7-

Case 7:15-cv-00021-EKD-PMS   Document 87   Filed 09/01/15   Page 7 of 10   Pageid#: 433

Abdullah cannot show the necessary likelihood of irreparable harm to him if the preliminary injunctive relief is denied, and I recommend that the court deny the same. Additionally, as stated above, Abdullah has notified the court that he recently has been transferred from Red Onion to Wallens Ridge, and there is no evidence before the court that either Younce or Barton also has been transferred to Wallens Ridge.

For all of these reasons, I find that the injunctive relief sought by Abdullah against the defendants, King, Walrath, Younce and Barton is not appropriate because Abdullah cannot show irreparable harm to him if the preliminary injunctive relief is denied. In addition to an order for injunctive relief for the defendants to stop the alleged retaliatory behavior, Abdullah requested a transfer from Red Onion to "another [VDOC] facility." He did not ask to be transferred to any specific VDOC facility. By his own admission, he now has been transferred to Wallens Ridge. There is no evidence before the court that any of the defendants currently work at Wallens Ridge. For all of these reasons, I will recommend that the court deny the Motion in its entirety.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Abdullah has failed to establish that the entry of a preliminary injunction is appropriate against any of the defendants based on his

claims of mail tampering, denial of recreation privileges or issuing bogus institutional charges against him;

2. Abdullah has failed to establish that the entry of a preliminary injunction is appropriate against the defendants, King, Walrath, Younce and Barton; and

3. The court should deny the Motion For Emergency Preliminary Injunction, (Docket Item No. 18), in its entirety.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the Motion For Emergency Preliminary Injunction, (Docket Item No. 18), in its entirety.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. ' 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: September 1, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE